*Oral Argument Has Not Been Scheduled*
_____

No. 15-1338
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

UNITED STATES POSTAL SERVICE,
*Petitioner,*

v.

POSTAL REGULATORY COMMISSION,
*Respondent,*

GAMEFLY, INC.,
*Intervenor for Respondent.*
_____

On Petition for Review of Order No. 2686 of the
Postal Regulatory Commission, Docket No. MC2015-7
_____

**BRIEF OF THE UNITED STATES POSTAL SERVICE**
_____


THOMAS J. MARSHALL                DAVID C. BELT*
Executive Vice President &        Office of the General Counsel
General Counsel                   United States Postal Service
                                  475 L'Enfant Plaza, SW
R. ANDREW GERMAN                  Washington, DC 20260
Managing Counsel                  (202) 268-2945

*Attorneys for the United States Postal Service*

**FINAL BRIEF:**
**January 25, 2016**                *\*Counsel of Record*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

### A.     Parties, Intervenors and Amici

Petitioner in this matter is the United States Postal Service. Respondent in this matter is the Postal Regulatory Commission ("Commission").

This is a petition for review of a Commission final order in Docket Number MC2015-7.  Along with the Postal Service and a Public Representative appointed by the Commission, GameFly, Inc. participated in the proceedings before the Commission by filing comments (although it did not seek to intervene).   GameFly has intervened in the review proceeding in this Court.

No other entities sought to participate as intervenors or *amici curiae* in this petition for review.

### B.     Rulings Under Review

The United States Postal Service seeks review of Order Number 2686, *Order Denying Transfer of First-Class Mail Parcels to the Competitive Product Category*, dated August 26, 2015, in Commission Docket Number MC2015-7.  Order Number 2686 is located in the Joint Appendix ("JA") at pages JA158 through JA199.

### C.     Related Cases

This matter has not previously been before this Court or any other court.  A case concerning 39 U.S.C. § 3642(b)(1), the statutory provision at issue in the instant matter, is presently pending before this Court in *United States Postal Service v. Postal*

*Regulatory Commission*, No. 15-1018 (D.C. Cir. filed Jan. 21, 2015) (Pillard, Silberman, and Sentelle, JJ.). Case No. 15-1018 has been fully briefed and was argued before a panel of this Court on November 20, 2015. Although Case No. 15-1018 concerns the same statutory provision as the instant matter, the products in question and specific issues presented in the two cases are sufficiently distinct that the Postal Service does not believe that the two cases are "related" within the meaning of Circuit Rule 28(a)(1)(C).

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF AUTHORITIES ............................................................................v

GLOSSARY ................................................................................................. vii

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT CONCERNING PERTINENT STATUTORY AND
REGULATORY PROVISIONS ....................................................................2

STATEMENT OF THE CASE.......................................................................2

STATEMENT OF THE FACTS ....................................................................3

    A. "Market-Dominant" and "Competitive" Products under Title 39.............3

    B. Previous Commission Decisions on Requests to Transfer Parcel-
       Delivery Services to the List of Competitive Products ............................5

        1. Order No. 689 (Commercial Standard Mail Parcels)......................6

        2. Order No. 710 (Commercial First-Class Mail Parcels)...................9

        3. Order No. 1411 (Parcel Post) .......................................................11

    C. The Request to Transfer First-Class Mail Parcels and Order
       No. 2686 ...............................................................................................13

SUMMARY OF THE ARGUMENT .....................................................18

STANDING .................................................................................................19

ARGUMENT ...............................................................................................20

I.    Standard of Review .........................................................................20

II.   The Commission's Denial of the Postal Service's Request Was
      Arbitrary, Capricious, and an Abuse of Discretion .........................................21

        A.  Order No. 2686 Departed Without Explanation from the
            Commission's Relevant Precedent ............................................................22

        B.  The Majority Opinion Failed to Respond to the Arguments
            Presented By the Two Dissenting Commissioners...................................30

CONCLUSION.........................................................................................................33

CERTIFICATE OF COMPLIANCE.........................................................................34

CERTIFICATE OF SERVICE ..................................................................................35

STATUTORY ADDENDUM ...................................................................................36

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n of Gov't Employees v. FLRA*, 470 F.3d 375 (D.C. Cir. 2006) ..............20

*\*American Gas Ass'n v. FERC*, 593 F.3d 14 (D.C. Cir. 2000) ...............................30

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494
   (3d Cir. 1998)........................................................................................26

*Chamber of Commerce of U.S. v. SEC*, 412 F.3d 133 (D.C. Cir.
   2005) ....................................................................................................30

*\*Dillmon v. NTSB*, 588 F.3d 1085 (D.C. Cir. 2009)...................................23

*\*Hatch v. FERC*, 654 F.2d 825 (D.C. Cir. 1981) ..............................23, 29

*In re Excelsior Shoe Co.*, 40 App. D.C. 480 (D.C. Cir. 1913) ................32

*\*Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112
   (D.C. Cir. 2010) .............................................................................23, 25

*LeMoyne–Owen College v. NLRB,* 357 F.3d 55 (D.C. Cir. 2004) .........23

*\*LePage's 2000, Inc. v. Postal Regulatory Comm'n,* 642 F.3d 225
   (D.C. Cir. 2011) ..................................................................................24

*Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094 (D.C. Cir. 2012) .................20

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto.
   Ins. Co.*, 463 U.S. 29 (1983) ................................................................20

*Ramaprakash v. FAA,* 346 F.3d 1121 (D.C. Cir. 2003) .........................23

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory
   Comm'n*, 789 F.2d 26 (D.C. Cir. 1986) ...............................................32

**\*Authorities upon which we chiefly rely are marked with asterisks.**

v

*United Parcel Serv., Inc. v. U.S. Postal Serv.*, 184 F.3d 827
(D.C. Cir. 1999) ...................................................................................3

*U.S. v. Continental Can Co.*, 378 U.S. 441 (1964)....................................26

*U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ................21

*Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319
(D.C. Cir. 2006) ...........................................................................22, 23

*Wisconsin Power & Light Co. v. FERC*, 363 F.3d 453 (D.C. Cir.
2004) ..................................................................................................32

## **STATUTES**

5 U.S.C. § 706.............................................................................................20

5 U.S.C. § 706(2) ........................................................................................20

39 U.S.C. § 102(8) ........................................................................................4

39 U.S.C. § 102(9) ........................................................................................4

39 U.S.C. § 201..............................................................................................3

39 U.S.C. § 403(e)(3).................................................................................24

39 U.S.C. § 3621 (2005) ..............................................................................3

39 U.S.C. § 3621(a) ......................................................................................4

39 U.S.C. § 3622(d)(1)..................................................................................4

39 U.S.C. § 3631(a) ......................................................................................4

39 U.S.C. § 3633(a) ..................................................................................4, 8

39 U.S.C. § 3642................................................................................1, 2, 29

39 U.S.C. § 3642(a) .........................................................................4

39 U.S.C. § 3642(b) .........................................................................4

*39 U.S.C. § 3642(b)(1) ...........................i, 1, 2, 5, 7, 8, 17, 21, 22, 25, 27, 30, 32

39 U.S.C. § 3642(b)(2)......................................................................5

39 U.S.C. § 3642(b)(3)......................................................................5

39 U.S.C. § 3663 .....................................................................1, 19, 20

Postal Accountability and Enhancement Act, Pub. L. No. 109-435,
    120 Stat. 3198 (2006)............................................................3, 4, 24

Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719
    (1970) .......................................................................................3

## DECISIONS OF THE POSTAL REGULATORY COMMISSION

*Order No. 689, *Order Conditionally Granting Request to
    Transfer Commercial Standard Mail Parcels to the
    Competitive Product List*, Docket No. MC2010-36 (P.R.C.
    Mar. 2, 2011)..............................................................6, 7, 8, 9, 13, 27

*Order No. 710, *Order Adding Lightweight Commercial Parcels
    to the Competitive Product List*, Docket No. MC2011-22
    (P.R.C. Apr. 6, 2011) ............................................................9, 10, 11

*Order No. 1411, *Order Conditionally Granting Request to
    Transfer Parcel Post to the Competitive Product List*,
    Docket No. MC2012-13 (P.R.C. July 20, 2012) ......................11, 12, 13, 21, 26

Order No. 2306, *Order Denying Request*, Docket Nos.
    MC2013-57 & CP2013-75 (P.R.C. Dec. 23, 2014).....................................28, 29

# <u>GLOSSARY</u>

| | |
|---|---|
| APA | Administrative Procedure Act |
| Commission | Postal Regulatory Commission |
| FedEx | FedEx Corporation |
| JA | Joint Appendix |
| PAEA | Postal Accountability and Enhancement Act of 2006 |
| UPS | United Parcel Service, Inc. |

## JURISDICTIONAL STATEMENT

This petition challenges Order No. 2686 of the Postal Regulatory Commission ("Commission"), JA158-199, which rejected a request to transfer a postal product, First-Class Mail Parcels, from the list of "market-dominant" products to the list of "competitive" products under 39 U.S.C. § 3642.  This Court has jurisdiction pursuant to 39 U.S.C. § 3663, under which any "person, including the Postal Service, adversely affected or aggrieved by a final order or decision" of the Commission may institute review proceedings in this Court.  Order No. 2686 was issued on August 26, 2015.  This Petition was timely filed on September 22, 2015.

## STATEMENT OF THE ISSUES

The Postal Regulatory Commission denied a request of the United States Postal Service to transfer First-Class Mail Parcels, a parcel-delivery service, from the list of "market-dominant" products to the list of "competitive" products, reasoning that the Postal Service had failed to submit sufficient evidence to support a conclusion that First-Class Mail Parcels competes with services offered by FedEx or UPS to qualify as a competitive product under 39 U.S.C. § 3642(b)(1).

1.     Did the Commission abuse its discretion or act arbitrarily or capriciously by departing without a reasoned explanation (or any explanation) from its precedents in three similar parcel-transfer cases, in which the Commission

1

concluded that the same evidence that was presented in the instant case was sufficient to satisfy the statutory standard?

2.     Did the Commission abuse its discretion or act arbitrarily or capriciously by failing to respond to the arguments from the two dissenting Commissioners that the instant request should have been approved under Commission precedent and the Commission's knowledge of the marketplace?

## STATEMENT CONCERNING PERTINENT STATUTORY PROVISIONS

The statutory provisions pertinent to this petition for review are set forth in an addendum appearing at the end of this brief.

## STATEMENT OF THE CASE

Between 2010 and 2014, the Postal Service presented four requests to transfer individual parcel-delivery services from the list of "market-dominant" products to the list of "competitive" products under 39 U.S.C. § 3642.  The Commission unanimously granted the first three requests, concluding that the Postal Service lacked "market power" within the meaning of 39 U.S.C. § 3642(b)(1) because the United Parcel Service, Inc. ("UPS") and FedEx Corporation ("FedEx") offer formidable competition in the parcel-delivery market. In support of its fourth request, the Postal Service presented the same evidence that it submitted (and that the Commission found sufficient) in the first three proceedings.  Nevertheless, the Commission, in a 3-2 decision, denied the fourth

request without even mentioning the three previous cases, let alone explaining how this case differed from those, and without addressing the arguments presented by the two dissenting Commissioners for why the fourth request should be approved.

The Postal Service seeks judicial review of Commission Order No. 2686, which denied the fourth request.    As explained below, the Commission's unexplained departure from its precedents and its failure to address the dissent's arguments are arbitrary, capricious, and an abuse of discretion, and accordingly Order No. 2686 should be vacated and the case remanded for further proceedings.

## STATEMENT OF THE FACTS

### A.    "Market-Dominant" and "Competitive" Products under Title 39.

The Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719 (1970), established the Postal Service as an independent establishment of the executive branch of the government, 39 U.S.C. § 201, and imposed a "cost of service" ratemaking model under which the Postal Service was entitled to rates that would provide it with sufficient revenues to cover its projected costs.  39 U.S.C. § 3621 (2005); *see United Parcel Serv., Inc. v. U.S. Postal Serv.*, 184 F.3d 827, 829-30 (D.C. Cir. 1999).

In 2006, Congress enacted the Postal Accountability and Enhancement Act ("PAEA"), Pub. L. No. 109-435, 120 Stat. 3198, which repealed the cost-based "break even" pricing model and gave the Postal Service enhanced flexibility to set

prices for its individual services (known as "products" under the PAEA). The restrictions on that flexibility depend primarily on whether a given product is "market-dominant" or "competitive." "Market-dominant" products are subject to a price cap, which generally forecloses the rates charged for each class of such products from rising above the rate of inflation. 39 U.S.C. § 3622(d)(1). By contrast, the principal restriction on "competitive" products is a price floor: individual competitive products must cover their "attributable" costs – largely the costs associated with processing that product – and competitive products collectively must cover "an appropriate share" of the Postal Service's "institutional" costs – largely the fixed costs of the Postal Service's retail and delivery networks. *Id*. § 3633(a).

This proceeding concerns the standard by which a postal product is classified as "market-dominant" or "competitive." The PAEA provides initial lists of "market-dominant" products, 39 U.S.C. § 3621(a), and "competitive" products, *id.* § 3631(a), *see also id.* §§ 102(8)-(9) (defining "market-dominant" and "competitive" product), and empowers the Commission (upon request of the Postal Service or a mailer, or on its own initiative) to change either list of products, add or remove products from the lists, or move products between the lists. *Id.* §§ 3621(a), 3631(a), 3642(a). The standards governing whether a product should be classified as "market-dominant" or competitive" are set forth in 39 U.S.C. § 3642(b).

4

The pertinent standard in this review proceeding is found in Section 3642(b)(1), which provides that:

> The market-dominant category of products shall consist of each product in the sale of which the Postal Service exercises sufficient market power that it can effectively set the price of such product substantially above costs, raise prices significantly, decrease quality, or decrease output, without risk of losing a significant level of business to other firms offering similar products. The competitive category of products shall consist of all other products.

39 U.S.C. §3642(b)(1).  Even where a product meets that standard, it is ineligible for "competitive" product status if it is covered by the "postal monopoly," *id.* § 3642(b)(2), which generally applies to the transmission of letters.  Finally, the Commission must give "due regard" to the considerations set forth in Section 3642(b)(3).

### B.  Previous Commission Decisions on Requests to Transfer Parcel-Delivery Services to the List of Competitive Products.

As mentioned above, the Commission approved the three previous requests by the Postal Service to transfer a parcel-delivery service from the list of market-dominant products to the list of competitive products.  In each case, as more fully described below, the Commission concluded that UPS and FedEx offered comparable parcel-shipping services that compete with the relevant postal product and accordingly prevent the Postal Service from exercising "sufficient market power" under 39 U.S.C. § 3642(b)(1).

### 1.     Order No. 689 (Commercial Standard Mail Parcels)

Before 2011, the Postal Service offered two similar ground-shipping services to "commercial" (business) parcel shippers: a market-dominant product (known as "commercial Standard Mail Parcels") for parcels weighing less than a pound, and a competitive product (known as "Parcel Select") for parcels weighing at least a pound.  In November 2010, the Postal Service proposed transferring commercial Standard Mail Parcels to the list of competitive products, where it would become the "Lightweight" subcategory of the competitive Parcel Select product.  *See* Order No. 689, *Order Conditionally Granting Request to Transfer Commercial Standard Mail Parcels to the Competitive Product List*, Docket No. MC2010-36, at 4-5 (P.R.C. Mar. 2, 2011), *available at* http://www.prc.gov/docs/72/72142/Order_No_689.pdf (hereafter "Order No. 689").

In support of its request, the Postal Service identified the ground-shipping services offered by FedEx and UPS as its primary competitors, Order No. 689 at 8, and estimated the share of the market that the Postal Service possessed:  79.2 percent of the volume of all ground parcels weighing less than a pound, and 20.1 percent of total ground parcel volume.  *Id.* at 7.  It further argued that, because the "parcel shipping marketplace [is] seamless," it made sense to regard the overall ground-parcel market as the relevant marketplace, rather than continuing to bifurcate the Postal Service's ground-parcel services into two separate products by

6

weight. *Id.* Moreover, the Postal Service explained, the price charged for its lightweight product was significantly lower than UPS's and FedEx's standard ground-shipping prices and was covering only 77 percent of its attributable costs, which was likely the reason for the Postal Service's large share of lightweight parcels volume. *Id.* at 6-7, 15.

In response to a formal question by the Commission regarding whether the Postal Service had "market power" within the meaning of 39 U.S.C. § 3642(b)(1), the Postal Service acknowledged that it did not possess any elasticity studies that would estimate the volume that would be lost if the Postal Service were to raise prices of its lightweight product, Order No. 689 at 11, 15, but asserted that such studies are not needed to satisfy the statutory standard, which asks merely whether the Postal Service can raise prices "significantly" without "risk of losing a significant level of business to other firms offering similar products." 39 U.S.C. § 3642(b)(1); *see* U.S. Postal Serv. Response to Commission Information Request No. 1, Questions 5 & 6 (P.R.C. filed Dec. 15, 2010), available at http://www.prc.gov/docs/71/71226/CIR.1.Resp.First.Set.pdf. The Postal Service interpreted that phrase as asking whether it was "possible" that a large price increase could cause a postal product to "lose a significant level of business in terms of volume," even if it produced a gain in net revenue. *See id.*, Question 5 (noting that a volume decrease but revenue increase "is the usual effect of a price

7

increase").  Given that UPS and FedEx offer comparable shipping services, the Postal Service argued, there is necessarily such a "risk" that a significant price increase by the Postal Service will cause it to lose a significant level of "business" (meaning volume) to its competitors.  Order No. 689 at 8, 11; *accord* U.S. Postal Serv. Response to Commission Information Request No. 1, *supra*, Question 6 ("[I]t is not unreasonable for the Postal Service to believe that, in response to a price increase, revenue would likely increase, while volume would fall."); *id.* (it is "impossible" that a price increase of the magnitude needed for the Postal Service to cover its costs "would not result in at least the risk of the Postal Service's competitors gaining a significant level of its business").

The Commission unanimously approved the request, but conditioned the approval on the Postal Service immediately raising the prices charged for the newly expanded Parcel Select product so that it would fully cover its attributable costs, consistent with 39 U.S.C. § 3633(a) (requiring each competitive product to cover its attributable costs).  Order No. 689 at 15, 19.  The Commission held that "the ground shipping market is competitive," and that "UPS and FedEx are formidable competitors for delivery of this product."  *Id.* at 14, 16.

Concerning the Postal Service's "market power" under 39 U.S.C. § 3642(b)(1), the Commission acknowledged that the Postal Service "has no demand elasticity estimate for commercial Standard Mail Parcels," but that such an

estimate is not needed because the statute requires merely a "risk of losing a significant level of business to other firms offering similar products," and the Postal Service's responses to Questions 5 and 6 of the Commission's information request, discussed above, "demonstrate[] that such risk exists."  Order No. 689 at 15.  Specifically, the Commission held, "price increases to above costs levels can reasonably be expected to risk loss of significant volume."  *Id.*  Any ability to raise prices "is limited by the competitors' decisions on pricing," the Commission continued, and the Postal Service's decision to raise prices "should enhance rather than inhibit [UPS's and FedEx's] competitive position vis-à-vis the Postal Service."  *Id.* at 16.  The Commission concluded that the "Postal Service has amply demonstrated that there is at least a risk of losing a substantial amount of business if its rates are raised significantly or if it alters its service," *id.*, and that, while the "Postal Service may establish higher prices for competitive lightweight parcels in the absence of the price cap constraint, competitive market forces will ensure that readily available small parcel delivery service to all areas will remain."  *Id.* at 18.

### 2.    <u>Order No. 710 (Commercial First-Class Mail Parcels)</u>

In February 2011, the Postal Service proposed transferring the commercial price categories of its lightweight First-Class Mail Parcels product to the list of competitive products, where they would appear in a new product called Lightweight Commercial Parcels.  Order No. 710, *Order Adding Lightweight*

*Commercial Parcels to the Competitive Product List*, Docket No. MC2011-22, at 2 (P.R.C. Apr. 6, 2011), available at http://www.prc.gov/docs/72/72457/ Order_No_710.pdf (hereafter "Order No. 710"). The proposed transfer would apply to lightweight commercial parcels entered into the system individually ("single-piece") or in bulk. Order No. 710 at 3. In support of its request, the Postal Service identified its primary competitors as the ground and two-to-three-day air shipping services offered by FedEx and UPS, along with various companies' consolidator ground services. *Id.* at 7.[1] As with its earlier parcel-transfer request, the Postal Service's primary evidence was its estimate of market share. While the Postal Service had captured most of the two-to-three-day air service segment of the market, it contended that the relevant market should also include both commercial and consolidator ground services. *Id.* at 5. When those segments are factored into the overall lightweight parcels market, the Postal Service estimated that it had only a 44 percent of the relevant market by volume and 34 percent by revenue. *Id.* at 6.

The Commission unanimously granted the request. As to the "market power" inquiry, the Commission first found that the Postal Service's "market shares indicate the presence of significant competition in the marketplace." *Id.*

---

[1] As suggested by their name, consolidators pick up parcels shipped by several low-volume customers and consolidate them into larger shipments in order to qualify for discounts provided to bulk mailers. The consolidators then share the value of these discounts with the low-volume end-customers.

Second, it found it significant that the request was unopposed by users of the commercial First-Class Mail Parcels product, which "suggests that shippers have alternatives available to satisfy their needs." *Id.* Because the Postal Service's product was already priced above its attributable costs, the Commission did not condition approval on a further price increase.

### 3.    <u>Order No. 1411 (Parcel Post)</u>

Finally, on April 26, 2012, the Postal Service proposed transferring Parcel Post, a retail service for less-than-urgent ground deliveries of parcels weighing one pound or more, to the list of competitive products. Order No. 1411, *Order Conditionally Granting Request to Transfer Parcel Post to the Competitive Product List*, Docket No. MC2012-13, at 1-2 (P.R.C. July 20, 2012), available at http://www.prc.gov/docs/83/83756/Order_No_1411.pdf (hereafter "Order No. 1411"). In support of the request, the Postal Service again relied on competition provided by UPS and FedEx products, namely UPS Ground and FedEx Ground, which offer faster guaranteed delivery times but are nonetheless "comparable" products. Order No. 1411 at 5; *accord id.* at 6 (finding those products as "generally comparable" despite fact that FedEx and UPS "are widely viewed as offering superior service"). Again, the Postal Service's principal evidence consisted of market-share data, in which the Postal Service estimated that Parcel Post had, by volume, 17.6 percent of the ground package retail market and only 1.1

percent of the broader ground package market when commercial customers are included.  *Id.*

The Commission unanimously approved the request, subject to the condition that the Postal Service raise the price of the product by roughly 15 percent so that it would cover its attributable costs.  Order No. 1411 at 10, 12-14.[2]  In justifying approval, the Commission held that "[t]he parcel delivery market is competitive. UPS and FedEx are the dominant carriers, precluding the Postal Service from exercising sufficient market power to effectively set prices above costs or raise prices significantly without risk of losing significant levels of business to other carriers."  *Id.* at 6.  Although the Commission noted a concern that UPS and FedEx do not have many retail facilities to serve individuals in rural areas, the Commission concluded that nothing in the record shows that rural customers cannot send parcels by UPS or FedEx or that their service "is inadequate to serve the various nationwide shipping needs of consumers."  *Id.* at 5-6, 8.  Finally, the Commission again found it significant that no user of the Parcel Post product opposed the transfer, *id.* at 9, and that any concern over a price increase would be checked by "the existence of competitors and, to a lesser extent, prices the Postal Service establishes for Priority Mail."  *Id.* at 10.

---

[2] Parcel Post is now a competitive product known as Retail Ground.

**C.      The Request to Transfer First-Class Mail Parcels and Order No. 2686.**

It is against this backdrop that, on November 14, 2014, the Postal Service filed the instant request to transfer First-Class Mail Parcels, a service offering one-to-three-day delivery of lightweight parcels (weighing up to 13 ounces) that is used primarily (but not entirely) by retail customers, to the list of competitive products. JA1-26.  As with its other proposals, the Postal Service identified the principal competition as "the parcel shipping services offered by UPS and FedEx," specifically UPS's 2nd Day Air, 3-Day Select, and Ground products and FedEx's One Rate, 2-Day, Express Saver, Ground, and Home Delivery products.  JA11. The Postal Service acknowledged that UPS and FedEx's comparable options are more expensive than First-Class Mail Parcels, JA45, JA47, as was true in previous cases, *see* Order No. 689 at 7; Order No. 1411 at 10, but noted that those "competing products offer additional features such as money-back guarantees and insurance up to a specific declared value."  JA11; *accord* JA46-47.

As with its earlier requests, the Postal Service's principal evidence demonstrating a lack of market power consisted of market-share data.  Explaining that First-Class Mail Parcels competes in the two-to-three-day air and ground parcel markets for retail and commercial customers, the Postal Service showed that its product represents 7.9 percent of the volume in that market; 38.7 percent of the market if only parcels weighing less than one pound are considered; and 7.2

percent of the entire parcel market (regardless of weight or delivery speed).  JA9.

Given the "robust" competition in the parcel market, which "includes both price

and non-price factors," the Postal Service continued, a significant price increase

would present a risk of "a substantial loss of volume to competition."  JA47-48.

Also in keeping with its earlier requests, the Postal Service's request was not

opposed either by its competitors, UPS and FedEx, or by any users of the product

in question.  It was opposed, however, by GameFly, Inc., a company that offers

rental video-game DVDs by mail and uses "flats" (large envelopes) to send and

receive DVDs.  GameFly did not purport to use First-Class Mail Parcels or any

other parcel-delivery services, and stated that it was "concerned mainly with the

precedential effect of this case on pending or future product transfer cases."

JA52.[3]  GameFly argued that the standard for "market power" should be governed

by whether "above-inflation price increases on First-Class Parcels would raise the

Postal Service's net earnings," *i.e.*, whether it could "increase prices profitably."

JA52.  It contended that the Postal Service fails that test, because it raised First-

Class Mail Parcel prices by 11 percent in the third quarter of Fiscal Year 2014 and

volume declined by only 6.4 percent.  JA58.  The Commission-appointed Public

---

[3] At the time that GameFly opposed the instant request, the Commission was separately considering a request by the Postal Service to create a new competitive product for the delivery of round-trip rental DVDs.  That case is presently pending before this Court in *United States Postal Service v. Postal Regulatory Commission*, No. 15-1018 (D.C. Cir. filed Jan. 21, 2015) (Pillard, Silberman, and Sentelle, JJ.).

Representative also opposed transfer of the product, remarking that the Postal Service had not presented any "demand elasticities" for First-Class Mail Parcels and suggesting that, while "any loss of business is assumed to occur with a price hike," the Commission cannot determine whether such losses would be "significant" unless the Postal Service presents "quantified evidence about the level of business that will be lost." JA79-80.

The Postal Service responded that the Commission had not previously adopted GameFly's conception of "market power," and in fact had previously approved the re-classification of a product as competitive even where the Postal Service had proposed (or the Commission had required) a large price increase. JA96. The Postal Service argued that the Commission's earlier decisions correctly focused on the postal product's market position (including market-share data) and the Commission should continue the approach developed by those precedents. JA97-103.

On August 26, 2015, the Commission issued Order No. 2686, which, in a 3-2 decision, denied the Postal Service's request. JA158-182 (majority opinion); JA186-199 (dissenting opinion). The majority concluded that the Postal Service had "not sufficiently provided evidence that it lacks the ability to raise the price of Single-Piece, First-Class Mail Parcels significantly without risk of losing significant business to a competitor." JA173. Specifically, the Commission held,

the Postal Service did not identify the relevant market in which First-Class Mail Parcels competes or whether products offered by FedEx and UPS are reasonable substitutes for the Postal Service's product. JA173-178. To make such a showing, the Commission said, the Postal Service must present "evidence, such as expert testimony, special studies, academic research, industry papers, or other calculations and estimates." JA174. Among other things, the Commission held, that evidence should show whether "other firms" deliver packages and parcels, JA177, identify any differences (in price, delivery guarantees, or tracking) between competing products and First-Class Mail Parcels, JA177-78, and discuss why certain customers are more likely to choose one product over another because of those differences. JA178. Finally, the Postal Service should prove how demand for its product is affected by price. JA179.

At no point during this discussion did the majority attempt to distinguish the factual showing that the Commission accepted in previous cases from the showing that the Postal Service offered in the instant case. Nor did the majority explain why it now required a more exacting showing than it had accepted in previous cases. In fact, the majority's analysis did not mention its previous parcel-transfer decisions at all.

By contrast, the two dissenting Commissioners relied heavily on those earlier decisions in their 14-page opinion, arguing that the majority decision

"contradicts established Commission precedent." JA186. The dissent reminded the majority that "the Postal Service has thrice appeared before the Commission with the very same evidence" it presented in the instant case – specifically, competitor products that deliver a customer's parcel at comparable speed and estimates of the postal product's market share – "and thrice the Commission found it sufficient. The Order does not explain why the same evidence is now found wanting." JA186; JA187-190 (discussing evidence presented in previous cases). The dissent also elucidated how the evidence presented in the instant case was sufficient to satisfy the statutory standard under Section 3642(b)(1) that the Commission's earlier decisions established. JA193-195.

In addition to failing "to engage with established Commission precedent in parcel reclassification cases," the dissent contended that the majority opinion "also fails to acknowledge the plain reality of today's marketplace," in which any person can "walk into a UPS store," a "FedEx Office Print and Ship Center," or "a third-party shipping store" and send the same package that otherwise could be mailed as a First-Class Mail Parcel. JA192-193. Particularly in light of the Commission's consistent conclusion in previous cases that "the parcel delivery market is competitive," the dissent offered that "one would expect the Commission would require less evidence for new parcel cases, not more." JA190. The dissent continued that there is no reason to require the Postal Service to re-prove that it

competes with UPS and FedEx; "scarcely anyone who sends a parcel in this country is unaware that there are two major carriers besides the Postal Service ready to deliver it," JA186, so the Commission, which is "specifically designated by Congress" to resolve such issues, should be able to reach the same conclusion without needing "expert testimony" or "academic research" on the topic. JA193.

Just as it did not mention the Commission's parcel-transfer precedents, the majority decision also did not mention the dissenting opinion and did not respond to the points made therein. This petition followed.

## SUMMARY OF THE ARGUMENT

Order No. 2686 faults the Postal Service for failing to prove that it competes with UPS and FedEx for the delivery of parcels, or more specifically for the two-to-three day delivery of lightweight parcels. That is plainly arbitrary and capricious because, as the dissenting Commissioners addressed in detail, the Commission's precedents demonstrate that the entire parcel-delivery market is competitive and that UPS and FedEx compete across the board with the Postal Service for parcel-delivery services. In each of its previous decisions concerning a request to reclassify a parcel-delivery product as competitive, the Commission concluded that the Postal Service lacked "market power" over the product because FedEx and UPS offer comparable (albeit often pricier) services and the Postal

18

Service's less-than-commanding market share would prevent it from raising prices significantly without the risk of losing significant volume to its competition.

The Commission's analysis in Order No. 2686 did not even mention those decisions, let alone attempt to distinguish them or explain the Commission's sudden departure from them.  Further, it failed to address the arguments presented by the dissent for why the instant transfer request should be approved.  For these reasons, the Commission's order should be set aside and the case remanded for further proceedings.

## **STANDING**

The Postal Service has standing under 39 U.S.C. § 3663 to challenge Order No. 2686.  It is "adversely affected or aggrieved" by the Commission's order because it undermines the Postal Service's flexibility to set market-responsive prices for one of its services and instead subjects such prices to the artificial restraint of a price cap.  As the dissenting Commissioners argued and as the majority did not dispute, the Commission's decision will deprive the Postal Service of needed revenue.  JA186 ("As a result of today's decision, the Postal Service could lose more than $100 million in annual revenue.")  This Court can redress these injuries by granting the petition for review and setting aside the Commission's conclusions as contrary to law, arbitrary, and capricious.

# **ARGUMENT**

## I.     STANDARD OF REVIEW

Under Section 706 of the APA, 5 U.S.C. § 706, an agency order must be held unlawful and set aside if, among other things, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or is "unsupported by substantial evidence." *Id.* § 706(2)(E); *see also* 39 U.S.C. § 3663 (courts shall review Commission orders under APA Section 706). An agency decision can be struck down under this standard if, for example, it lacks a "rational explanation . . . based on consideration of the relevant factors," *Am. Fed'n of Gov't Employees v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006) (citation omitted), or there is no "reasoned path" from the facts and circumstances before the agency to the decision it reached, or the decision is "illogical on its own terms." *Id.* (citations omitted). "Put simply, the APA requires that an agency's exercise of its statutory authority be reasonable and reasonably explained." *Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094, 1096 (D.C. Cir. 2012); *accord Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (agency's explanation for its decision must be "sufficient to enable us to conclude that [it] was the product of reasoned decisionmaking").

## II.    THE COMMISSION'S DENIAL OF THE POSTAL SERVICE'S REQUEST WAS ARBITRARY, CAPRICIOUS, AND AN ABUSE OF DISCRETION.

The Commission denied the Postal Service's request to transfer First-Class Mail Parcels because it concluded that the Postal Service failed to prove that the product lacked "sufficient market power" under 39 U.S.C. § 3642(b)(1), meaning that it lacked the ability to raise the prices of First-Class Mail parcels "significantly without risk of losing significant business to a competitor." JA173. In analyzing the "market power" issue under Section 3642(b)(1), the Commission said, it must first define the market, JA172-173, which generally consists of products that are "reasonably interchangeable by consumers for the same purposes." *See U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Here, of course, the purpose for which a customer would use the Postal Service's First-Class Mail Parcel product is to ship a parcel. The Commission does not dispute that UPS and FedEx also deliver parcels and, more specifically, that they offer services to deliver lightweight parcels within the two-to-three-day time frame offered by the First-Class Mail Parcels product.

Despite the fact that the Commission previously held that the "parcel delivery market is competitive," Order No. 1411 at 6, and has not identified any categories of parcels that FedEx and UPS do not deliver, the majority concluded that the Postal Service must submit "evidence, such as expert testimony, special

studies, academic research, industry papers, or other calculations and evidence," JA174, to prove that "the other firms' products act as substitutes for the Postal Service's product" and thereby compete in the same market.  JA178.  As discussed below, this evidentiary standard is inconsistent with the standard set forth in the Commission's earlier decisions, which squarely held that the Postal Service's parcel-delivery products compete with UPS's and FedEx's services based on the same evidence presented here, and without any need to resort to expert testimony or other studies.  The Commission does not mention its precedents or address the arguments made by the dissenting Commissioners for why the evidence in the instant case should have produced the same outcome that such evidence produced in its previous cases.  For each of these reasons, the Commission's order is arbitrary, capricious, and an abuse of discretion.

### A.   Order No. 2686 Departed Without Explanation From the Commission's Relevant Precedent.

The Commission's order violated a cardinal tenet of administrative law:  its analysis of Section 3642(b)(1) departed from the analysis set forth in the Commission's earlier decisions without addressing those decisions or providing a reasoned explanation for the departure.

It is axiomatic that reasoned decisionmaking requires an administrative agency to either act consistently with its previous rulings or offer a reasoned basis for departing from them.  *E.g.*, *Williams Gas Processing-Gulf Coast Co. v. FERC*,

475 F.3d 319, 326 (D.C. Cir. 2006); *Hatch v. FERC*, 654 F.2d 825, 834 (D.C. Cir. 1981).   When it does the latter, the agency must both acknowledge that it is changing its position and explain the reason for the change.   *Hatch*, 654 F.2d at 834; *Dillmon v. NTSB*, 588 F.3d 1085, 1089-90 (D.C. Cir. 2009) (when agency departs from past rulings it must display awareness that it is changing position by acknowledging established precedent and explaining the reasons for departing from it); *accord Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (the requirement that an agency supply a reasoned analysis for a change in course is "[o]ne of the core tenets of reasoned decisionmaking"). An "agency that neglects to do so acts arbitrarily and capriciously." *Jicarilla Apache Nation*, 613 F.3d at 1119.  Similarly, where an agency is confronted with relevant precedent that is arguably in tension with its chosen analysis, it must at the very least explain why that precedent is distinguishable or is not being followed. This Court has cautioned that it has "never approved an agency's decision to completely ignore relevant precedent."  *Id.* at 1120 (citing *LeMoyne–Owen College v. NLRB,* 357 F.3d 55, 61 (D.C. Cir. 2004)); *Ramaprakash v. FAA,* 346 F.3d 1121, 1125 (D.C. Cir. 2003) ("An agency's failure to come to grips with conflicting precedent constitutes an inexcusable departure from the essential requirement of reasoned decision making.") (citation omitted).

This Court has confirmed that these standards apply with equal force to the Commission's decisions.  In *LePage's 2000, Inc. v. Postal Regulatory Comm'n,* 642 F.3d 225 (D.C. Cir. 2011), this Court considered the Commission's interpretation of 39 U.S.C. § 403(e)(3).  That section empowered the Commission to allow the Postal Service to continue providing certain "nonpostal" services that it was providing as of the enactment of the PAEA after considering, among other things, whether there is a "public need" for the service in question.  In an earlier decision, the Commission had concluded that the Postal Service's licensing of its intellectual property on third-party shipping supplies served a "public need" because it generated revenues for the Postal Service and promoted its brand.  642 F.3d at 228.  In a later phase of the case, however, the Commission "subtly, and without explanation, changed this approach" and focused on whether the shipping supplies themselves (rather than the licensing program) met a public need.  "In other words, the Commission altered its analytic frame from the activity the Service engaged in to the products that resulted from that activity."  *Id.* at 233.  Because the Commission did so without offering a "reason for this departure," this Court vacated the later order.  *Id.*

Here, there was nothing subtle about the Commission's change of approach.  It does not dispute that the factual showing made in support of the instant request was, in all pertinent respects, identical to the showing that the Postal Service made

in the other three (successful) parcel-transfer requests. JA186. In all four cases, as the dissent noted without contradiction, the Postal Service established that its product competed in the same market as UPS and FedEx by pointing to specific products of those firms that a customer could use for the same purpose. JA187-190. In each case, the Postal Service demonstrated its lack of market power by relying on its estimated share of the market in question. JA187-190. In short, the "Postal Service has thrice appeared before the Commission with the very same evidence" it presented here, "and thrice has the Commission found it sufficient" to satisfy the statutory standard. JA186. Accordingly, there is nothing here so obviously distinguishable from the Commission's parcel-transfer precedents that it could excuse the Commission from failing to affirmatively consider them. *See Jicarilla Apache Nation*, 613 F.3d at 1120 (this Court does not "require an agency to grapple with every last one of its precedents, no matter how distinguishable").

The only evident distinction between those cases and the instant case is the Commission's legal standard (and thus the outcome). The evidence previously deemed sufficient to satisfy 39 U.S.C. § 3642(b)(1) is insufficient here because the majority held that the Postal Service must now also submit "expert testimony, special studies, academic research, industry papers, or other calculations and estimates," JA174, addressing a host of issues that the Commission now says may

25

be "useful" in its analysis, but that it never previously suggested were necessary to resolve under the statutory standard. JA175-178.

There are many examples that demonstrate the Commission's about-face, but two such examples illustrate the point adequately. First, in Order No. 2686, the Commission noted various differences – in prices, delivery guarantees, tracking, insurance, and perceived reliability – between First-Class Mail Parcels and UPS's and FedEx's comparable products, and it explained that those differences may suggest that the other firms' services do not compete in the same market as the Postal Service's product. JA177-178. Such differences also existed in previous parcel-transfer cases, however. In the Parcel Post request, for example, the Commission concluded that UPS's and FedEx's services were comparable to Parcel Post even though they were more expensive, offered faster delivery times, and "are widely viewed as offering superior service." Order 1411 at 5-6. As the dissent noted, UPS's and FedEx's services may "include different added features and enhancements," but the important point under the Commission's precedents was whether "they accomplish the same basic function." JA193; *cf. U.S. v. Continental Can Co.*, 378 U.S. 441, 449 (1964) (products need not be homogenous or fungible in order to compete in the same product market); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998) ("Interchangeability implies that one product is roughly equivalent to another for the use to which it is

put; while there might be some degree of preference for the one over the other, either would work effectively.") (citation omitted).

Second, Order No. 2686 suggested that it could not resolve the "sufficient market power" question under 39 U.S.C. § 3642(b)(1) unless the Postal Service provided an estimate for "how the demand for its product is affected" if the Postal Service were to raise prices significantly.   JA179.   But in Order No. 689, the Commission held that such an estimate was not needed because the statute requires merely a "risk" of losing significant business "to other firms offering similar products," and the Postal Service demonstrated "that such risk exists" by averring the possibility that a large price increase could cause a postal product to lose a significant level of volume despite producing a gain in net revenue.   Order No. 689 at 15 (citing USPS Resp. to Chairman's Information Request No. 1, Questions 5 & 6).

Not only does Order No. 2686 fail to explain the reason for the Commission's about-face on these and other issues, its analysis *does not even mention* its previous decisions or otherwise acknowledge its above-face, instead leaving the impression that the Commission was writing on a blank canvas.   This is inexcusable under the APA under any circumstances, but is particularly stunning here, where the dissent discussed those prior decisions at length and affirmatively alerted the majority to the fact that Order No. 2686 "contradicts established

Commission precedent," JA186, and "fails to engage with established Commission precedent in parcel reclassification cases."  JA192.

In fact, the only Commission precedent that Order No. 2686 cites is its December 2014 decision denying a request to create a new competitive product for the round-trip mail delivery of rented movie or video-game DVDs.  *See* JA172 n.27 (citing Order No. 2306, *Order Denying Request*, Docket Nos MC2013-57 & CP2013-75 (P.R.C. Dec. 23, 2014), available at http://www.prc.gov/docs/90/ 90975/Order%20No.%202306.pdf) (hereafter "Order No. 2306").  But citing that decision hardly excuses the Commission from addressing or explaining its departure from its *parcel-transfer* precedents.  First, the Commission cited Order No. 2306 only in a footnote and solely to note that, in that case, the Commission had relied on antitrust principles to define the relevant product market.  That is neither surprising nor noteworthy.  Unlike here, that case required a more searching inquiry into the definition of the market for the underlying product.  The principal question in that case was whether consumers view DVD-by-mail service as sufficiently similar to other means of watching movies or playing video games at home (such as Internet streaming or rental kiosks) to constitute a single market in which the Postal Service competes against other networks to deliver movie and video-game content.  *See* JA191 (noting that Order No. 2306 concerned a case that "required the Commission to step outside its traditional area of expertise and

28

consider a market defined more broadly than traditional physical delivery services"). In other words, the primary issue in the DVD-by-mail case concerned the scope of the larger market in which the underlying product competes, whereas the issue in parcel-reclassification cases concerns the market for delivering a specific underlying product – a parcel.

Second, as the dissent noted without dispute, "Order No. 2306 neither stated nor implied that the Commission was thereby establishing a new evidentiary standard for all subsequent section 3642 cases." JA191. *See Hatch*, 654 F.2d at 834 (agency's duty to explain a departure from precedent is not discharged by its reliance on recent cases where those cases "do not contain announcement of a new standard and supporting rationale either"). Nothing in Order No. 2306 purported to overrule or deviate from the Commission's parcel-transfer precedents, and nothing in the instant order cited Order No. 2306 as establishing a new standard for parcel-transfer cases.

Because the Commission failed to address its previous decisions, let alone explain why they are distinguishable or why the Commission was departing from them, the Commission's order is arbitrary, capricious, and an abuse of discretion, and it should be remanded.

**B.**     **The Majority Opinion Failed to Respond to the Arguments Presented by the Two Dissenting Commissioners.**

For similar reasons, the Commission's order is arbitrary and capricious because it failed to mention, let alone consider, the arguments made by the dissenting Commissioners in favor of approving the Postal Service's request. The order must be remanded on this basis as well.

This court has consistently held that, as part of its duty under the APA to carry out reasoned and principled decisionmaking, an administrative agency must consider any reasonable alternatives to the position that the agency ultimately adopts. *American Gas Ass'n v. FERC*, 593 F.3d 14, 19 (D.C. Cir. 2000). That rule applies to arguments made or alternatives proposed by dissenting Commissioners. Although the Commission "is not required to agree with arguments raised by a dissenting Commissioner, it must, at a minimum, acknowledge and consider them." *Id.* at 20 (citation omitted) (remanding decision for further proceedings where Commission "provided no direct response" to points raised by dissenting Commissioner that were neither frivolous nor out of bounds"). *Accord Chamber of Commerce of U.S. v. SEC*, 412 F.3d 133, 144 (D.C. Cir. 2005) (SEC had obligation to consider arguments raised by dissenting Commissioners).

As addressed above, the two dissenting Commissioners explained in detail why the evidence that the Postal Service presented here satisfied the Commission's precedents for reclassifying a parcel product under 39 U.S.C. § 3642(b)(1). Just as

the Commission is not free to ignore those precedents, it is not free to ignore the dissent's argument that the majority's analysis "contradicts established Commission precedent," JA186, which was "consistent and decisive" in concluding that "the parcel delivery market is competitive" and that "UPS and FedEx compete with the Postal Service" to deliver "lightweight parcels as well as heavy parcels" and "commercial parcels as well as retail parcels." JA190.

Much of the dissent was devoted to detailing how the Postal Service made the evidentiary showing that the Commission's previous decisions required, but the dissent made additional arguments that the Commission also ignored. First, the dissent contended that, in light of its previous holdings that UPS and FedEx compete with the Postal Service for the delivery of *all* parcels, the Commission should have "require[d] *less* evidence" to demonstrate competition in the marketplace than it required in the past. JA190 (emphasis added). Indeed, the dissent argued, the Commission should have been able to rely on its own expertise to "acknowledge the plain reality of today's marketplace," in which "[a]nyone can walk into a UPS Store" or a "FedEx Office Print & Ship Center" and send "a parcel to anywhere in the United States." JA192-193. This is hardly an unreasonable position. An agency can take notice of "matters of common knowledge, of evidence available to [it] from other proceedings, and of matters known to the agency through its cumulative experience and consequent expertise."

31

*Wisconsin Power & Light Co. v. FERC*, 363 F.3d 453, 463 (D.C. Cir. 2004); *cf.*

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d

26, 44 (D.C. Cir. 1986) (en banc) (Commission "is not required to hold a hearing

to prove what common sense shows"); *In re Excelsior Shoe Co.*, 40 App. D.C. 480,

482 (D.C. Cir. 1913) (Commissioner of Patents need not "shut his eyes to what

everybody else of intelligence knows" by requiring evidence in order to find that

there exists an organization known as the Boy Scouts).  In fact, one of the three

Commissioners in the majority – and thus the deciding vote – wrote separately to

concede that "common sense alone would seem to dictate" that First-Class Mail

Parcels "may indeed be part of the broader, competitive parcel market."  JA183.

But neither he nor the other Commissioners in the majority addressed the dissent's

argument that a thorough evidentiary record is unnecessary to establish that the

postal parcel-delivery product competes with services offered by UPS and FedEx.

Second, the dissent noted that, even if (contrary to Commission precedent)

the Postal Service must actually estimate the impact on demand of a large price

increase in order to meet the "market power" standard under 39 U.S.C. §

3642(b)(1), the record already contains such evidence.  Specifically, "there is

evidence in the record that an 11 percent price increase [on First-Class Mail

Parcels] already led to a 6.4 percent volume decline, and that this decline occurred

at a time when the overall parcel market expanded." JA195 (footnote omitted). The majority failed to consider this argument either.

Because the majority opinion does not even mention the dissent, let alone address or rebut the points that the dissent made, Order No. 2686 is arbitrary and capricious and must be remanded.

## **CONCLUSION**

For the reasons stated above, this Court should grant the petition for review and remand the matter to the Commission for further proceedings.

Dated: January 25, 2016         Respectfully submitted,

THOMAS J. MARSHALL
Executive Vice President & General Counsel

R. ANDREW GERMAN
Managing Counsel


/s/ David C. Belt
DAVID C. BELT
Office of the General Counsel
United States Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260
(202) 268-2945
david.c.belt@usps.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Fed. R. App. P. 32(a)(7), that the foregoing Brief of the United States Postal Service uses proportionately spaced, 14-point type, and contains 7,419 words as measured by Microsoft Word, a word processing system that includes footnotes and citations in word counts.

 /s/ David C. Belt_____
Attorney for the U.S. Postal Service
Dated:  January 25, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 25, 2016, the foregoing brief was electronically filed with the U.S. Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.  I further certify that counsel for the respondent and the intervenor are registered as ECF filers and that they will be served by the CM/ECF system.

 /s/  David C. Belt
DAVID C. BELT
Office of the General Counsel
United States Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260
(202) 268-2945
david.c.belt@usps.gov

# STATUTORY ADDENDUM

# **TABLE OF CONTENTS**

**Page**

39 U.S.C. § 102(8)-(9) ........................................................................Add. 1

39 U.S.C. § 3621(a) ...........................................................................Add. 1

39 U.S.C. § 3631(a) ...........................................................................Add. 2

39 U.S.C. § 3642(a)-(b) .....................................................................Add. 3

39 U.S.C. § 3663..................................................................................Add. 4

TITLE 39—POSTAL SERVICE

PART I—GENERAL

## CHAPTER 1—POSTAL POLICY AND DEFINITIONS

\*\*\*

### § 102.  Definitions

As used in this title—

\*\*\*

(8) "market-dominant product" or "product in the market-dominant category of mail" means a product subject to subchapter I of chapter 36;

(9) "competitive product" or "product in the competitive category of mail" means a product subject to subchapter II of chapter 36;

\*\*\*


PART IV—MAIL MATTER

\*\*\*

## CHAPTER 36—POSTAL RATES, CLASSES, AND SERVICES

## SUBCHAPTER I—PROVISIONS RELATING TO MARKET-DOMINANT PRODUCTS

### § 3621. Applicability; definitions

(a) Applicability.—This subchapter shall apply with respect to—

   (1) first-class mail letters and sealed parcels;

   (2) first-class mail cards;

   (3) periodicals;

   (4) standard mail;

   (5) single-piece parcel post;

   (6) media mail;

**Add. 1**

(7) bound printed matter;

(8) library mail;

(9) special services; and

(10) single-piece international mail,

subject to any changes the Postal Regulatory Commission may make under section 3642.

\*\*\*


SUBCHAPTER II—PROVISIONS RELATING TO COMPETITIVE PRODUCTS

**§3631. Applicability; definitions and updates**

(a) Applicability.—This subchapter shall apply with respect to—

(1) priority mail;

(2) expedited mail;

(3) bulk parcel post;

(4) bulk international mail; and

(5) mailgrams;

subject to subsection (d) and any changes the Postal Regulatory Commission may make under section 3642.

\*\*\*


SUBCHAPTER III—PROVISIONS RELATING TO EXPERIMENTAL AND NEW PRODUCTS

\*\*\*


**Add. 2**

### §3642. New products and transfers of products between the market-dominant and competitive categories of mail

(a) In General.—Upon request of the Postal Service or users of the mails, or upon its own initiative, the Postal Regulatory Commission may change the list of market-dominant products under section 3621 and the list of competitive products under section 3631 by adding new products to the lists, removing products from the lists, or transferring products between the lists.

(b) Criteria.—All determinations by the Postal Regulatory Commission under subsection (a) shall be made in accordance with the following criteria:

(1) The market-dominant category of products shall consist of each product in the sale of which the Postal Service exercises sufficient market power that it can effectively set the price of such product substantially above costs, raise prices significantly, decrease quality, or decrease output, without risk of losing a significant level of business to other firms offering similar products. The competitive category of products shall consist of all other products.

(2) Exclusion of products covered by postal monopoly.—A product covered by the postal monopoly shall not be subject to transfer under this section from the market-dominant category of mail. For purposes of the preceding sentence, the term "product covered by the postal monopoly" means any product the conveyance or transmission of which is reserved to the United States under section 1696 of title 18, subject to the same exception as set forth in the last sentence of section 409(e)(1).

(3) Additional considerations.—In making any decision under this section, due regard shall be given to—

(A) the availability and nature of enterprises in the private sector engaged in the delivery of the product involved;

(B) the views of those who use the product involved on the appropriateness of the proposed action; and

(C) the likely impact of the proposed action on small business concerns (within the meaning of section 3641(h)).

\*\*\*

**Add. 3**

SUBCHAPTER V—POSTAL SERVICES, COMPLAINTS, AND JUDICIAL REVIEW

\*\*\*

### §3663. Appellate review

A person, including the Postal Service, adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may, within 30 days after such order or decision becomes final, institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia. The court shall review the order or decision in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, on the basis of the record before the Commission.